UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIAMA DUKURAY, | |
| Plaintiff, | 24-cv-1151(JSR) |
| -v- | MEMORANDUM ORDER |
| SENSIO, INC., | |
| Defendant. | |

JED S. RAKOFF, U.S.D.J.:

This is a products liability action brought by plaintiff Miriam Dukuray, in which she alleges that she was wrongfully injured by a defective pressure cooker designed by defendant Sensio, Inc. Before the Court is plaintiff's motion to compel the production of two categories of documents: (1) documents relating to other similar incidents related to similar models of pressure cooker made by defendant and (2) communications with regulatory bodies such as the Consumer Products Safety Commission (CPSC) and Health Canada regarding the defective pressure cooker. For the reasons set forth below, the Court grants plaintiff's motion with respect to both sets of documents.

**Other Similar Incidents.** Plaintiff first seeks to compel the production of documents relating to other similar incidents of malfunctioning by defective pressure cookers made by defendant. Defendant has refused to produce these documents on the grounds that they all concern different pressure cooker models than the one owned by plaintiff. Defendant argues that evidence of accidents involving other similar products "is admissible only upon a showing that the

1

relevant conditions of the subject accident and the previous one were substantially the same," which defendant claims plaintiff has not shown. *C.C. by & through Camarata v. Polaris Indus., Inc.*, 774 F. App'x 45, 47 (2d Cir. 2019) (quoting *Hyde v. County of Rensselaer*, 51 N.Y.2d 927, 929 (1980)). This statement is true, as far as it goes, regarding admissibility into evidence, but at this stage the question is not whether the information regarding other similar incidents is "admissible," but rather whether the information "reasonably could lead" to the discovery of admissible evidence. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Thus, to discover information about other malfunctioning models, the plaintiff need not prove the models are in fact sufficiently similar to warrant admission at trial, but only that it is reasonably likely the requested discovery will lead to the discovery of admissible evidence.

In this regard, plaintiff argues "[t]he requested information about other models is relevant because other electric pressure cookers sold by Sensio are substantially similar, if not identical, to Plaintiff's M-80B30G with respect to the potential to cause burn injuries when the lid blows off while the unit is still pressurized." Pls. Br. at 6. This claim is supported by the recall notice issued by Sensio, which describes the defect in plaintiff's pressure cooker and Sensio's other pressure cookers as the "lid can unlock and be removed during use, causing the hot contents to unexpectedly splash out, posing a burn hazard to consumers." Dkt. 22-2. This similarity is also supported, at least in part, by the report of plaintiff's expert, Dr. David Rondinone. *See* Dkr. 22-3. Defendant nonetheless insists that plaintiff has not proven these other pressure

cookers are sufficiently similar, and that plaintiff has not shown they contained the same design features, although defendant points to no evidence suggesting they are actually different. Defs. Br. at 3-4.

The Court finds plaintiff is entitled to discovery regarding those pressure cooker models listed in the recall notice. As noted, plaintiff is not required to prove substantial similarity at this stage in order to obtain discovery about other models. Were it otherwise, plaintiff would be placed in the impossible position of having to prove the other models are substantially similar while simultaneously being denied access to the discovery that would allow them to do this. Furthermore, those cases that have refused to provide discovery regarding similar products have done so where there was no evidence to suggest the other product is similar or contains a similar defect. *See, e.g., Reilly v. Home Depot USA, Inc.*, 2021 WL 6052407, at *3 (D.N.J. Dec. 21, 2021). Here, by contrast, plaintiff cites (a) the recall notice and (b) the report of her expert, which are sufficient to satisfy the minimal threshold to establish discoverability.

Defendant also claims that plaintiff has cited no authority to obtain documents about *subsequent* similar incidents. Opp. at 3-4. But while subsequent incidents may not be relevant to establish notice of a defect, they can still be admissible to prove negligence, design defect, or causation. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9463183, at *1 (S.D.N.Y. Dec. 28, 2015) ("In a product liability case such as this, evidence of other similar incidents may be admitted proving negligence, a design defect, notice of a defect, or causation." (internal

quotation marks omitted)). The Court therefore does not see why these incidents should be treated differently.

Finally, defendant argues that plaintiff has not limited her discovery requests to other incidents involving factually similar circumstances. Opp. at 4. The Court agrees that incidents where an individual was injured in a manner that did not even arguably involve a defect similar to that alleged by plaintiff here are not relevant or discoverable. However, this is not a ground for defendant to categorically refuse to produce all documents about other incidents. Nor is it reasonable for defendant to demand that plaintiff prove that the other incidents are similar, given that defendants are the ones in possession of information about those incidents. The parties have not provided the Court with a copy of the relevant discovery requests, or defendant's responses thereto, and it is not clear what factual dissimilarities defendant believes exist. The Court therefor finds any resolution of such disputes about the nature of the particular incident(s) to be premature.

Accordingly, the Court hereby overrules defendant's objection and defendant is hereby directed to produce to plaintiff discovery regarding accidents involving other models listed in the recall notice. To the extent defendant objects that a particular accident involved circumstances or defects that it believes are so clearly factually dissimilar from those at issue here as to warrant non-production, the parties are directed to meet-and-confer to attempt to resolve the dispute and, if they are unable to do so, to jointly call in to Chambers to obtain a further ruling from the Court.

**Regulatory Communications**. Defendant has refused to produce its communications with regulators regarding recalls of the relevant product on the grounds that such communications constitute subsequent remedial measures and are therefore not admissible pursuant to Federal Rule of Evidence 407. Defs. Br. at 5-6. As an initial matter, Rule 407 applies only to "subsequent measures" that occurred *after* plaintiff's injury, and so any measures taken before plaintiff's injury would plainly not be covered. Fed. R. Evid. 407. But more fundamentally, this argument fails because communications with regulators are, as a general matter, not "remedial measures" at all. Many communications to regulators -- for example, complying with a legal duty to inform the agency of the problem -- would have in no way "made [the] earlier injury or harm less likely to occur" and so plainly fall outside the rule's scope. Fed. R. Evid. 407. Even communications about a potential product recall would not be covered to the extent they are not necessary to carry out the remedial purpose of the recall. *See* Wright & Miller, Federal Practice & Procedure § 5283 (suggesting that, if a product recall letter "contains an admission of fault that is not necessary to carry out the remedial purpose [of the recall], that admission is beyond the scope of Rule 407"). In short, it is apparent that large swaths of these regulatory communications will not be excludable under Rule 407. And while it is possible some portions of the communications may ultimately be excluded from admission at trial, that is beside the point, because, as noted, the test for discoverability does not require the item ultimately be admissible.

As a fallback, defendant argues that these communications are protected by the "self-critical analysis privilege." Defs. Br. at 6-7. Neither the Supreme Court nor the Second Circuit have ever recognized such a privilege. *See Bagley v. Yale Univ.*, 315 F.R.D. 131, 151 (D. Conn. 2016), as amended (June 15, 2016). Among district courts, this purported privilege "has led a checkered existence," with some courts accepting it and others "reject[ing] it outright." *Wimer v. Sealand Serv., Inc.*, 1997 WL 375661, at *1 (S.D.N.Y. July 3, 1997).

This Court is highly skeptical that such a privilege exists, but even if the Court were to assume the existence of the privilege, the Court would find it inapplicable to the present case. The critical self-examination privilege is a qualified one, and may be overcome by sufficient countervailing interests. *See Hardy v. New York News, Inc.*, 114 F.R.D. 633, 641 (S.D.N.Y. 1987); *Bagley*, 315 F.R.D. at 151 ("[The privilege] must be balanced against the societal interest in discovery as it contributes to the full and fair adjudication of the issues invoked in litigation." (quotation omitted). Similarly, the privilege has been limited to circumstances where "a party has conducted a confidential analysis of its own performance in a matter implicating a substantial public interest, with a view towards correction of errors, [and] the disclosure of that analysis in the context of litigation may deter the party from conducting such a candid review in the future." *Bagley*, 315 F.R.D. at 151 (quoting *Wimer v. Sealand Service, Inc.*, 1997 WL 375661, at *1 (S.D.N.Y. July 3, 1997)).

Here, it is unclear whether most, if not all, of the regulatory communications even fall within the definition of the privilege. To the extent the communications were, for example, simply conveying facts to the regulators, the communications would not be protected. *See id.* (suggesting privilege "only applies to the analysis or evaluation itself, and not to the facts which are analyzed" (quotation omitted)). Similarly, communications *from* regulators obviously would not be covered. But more fundamentally, all the communications sought here were apparently in connection with a product defect and were made under the threat of regulatory sanction. In such circumstances, the pressure to honestly report to a regulatory agency far outweighs any concerns, in the mind of the regulatory party, about the risk that communications will be used against them in subsequent litigation, and accordingly application of the privilege would serve no purpose. *See id.* (concluding self-evaluative privilege did not apply when "staring at the twin barrels of a Title IX investigatory shotgun, held in the steady hand of the Office of Civil Rights of the United States Department of Education, which had fixed its unblinking gaze upon Yale").

Accordingly, defendant's objection is hereby overruled, and defendant is directed to produce to plaintiff's the requested regulatory communications.

**Interrogatories**. Finally, the parties have indicated that there is a dispute over certain interrogatories propounded by plaintiff. While the parties have not provided the Court with a copy of the

relevant interrogatories, it is apparent from the face of the parties' submissions that many, if not most, of these interrogatories are not in compliance with Local Civil Rule 33.3(a), which limits interrogatories to "those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature." Civil Local Rule 33.3(a). The Case Management Plan entered in this case reaffirmed that "[n]o other interrogatories are permitted except upon prior express permission of Judge Rakoff." Dkts. 9, 20. Neither plaintiff nor defendant have obtained such permission from the Court. Accordingly, any interrogatories propounded by either party in this case that are not in compliance Local Civil Rule 33.3(a) are hereby stricken and need not be responded to.

SO ORDERED.

New York, NY
June 27, 2024

JED S. RAKOFF, U.S.D.J.